UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          -against-<br><br>JOHN MUYET,<br><br>                    Defendant. | 95 CR 941 (LAP)<br><br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant John Muyet's motion ("Motion" or "Mot.") for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 490), the Government's opposition, (dkt. no. 493 ["Gov't Opp."]), and Defendant's reply, (dkt. no. 499). For the reasons set forth below, the motion is denied.

I.  **Background**

    a.  **The Indictment**

    Superseding Indictment S3 95 Cr. 941 (PKL) (the "Indictment") was filed on November 12, 1996, and contained forty-three counts. (See dkt. no. 141.) The Indictment charged Defendant with racketeering, narcotics, and firearms offenses arising out of his participation in the "Nasty Boys" gang. (See generally id.) The Defendant was second-in-command, and his brother, Jose Muyet, led the Nasty Boys operation. See United States v. Muyet, 225 F.3d 647 (2d Cir. 2000).

    Count One of the Indictment charged Defendant with participating in the conduct of the affairs of the Nasty Boys

1

racketeering enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). (See dkt. no. 141 ¶¶ 1-21.) Count One detailed fifteen racketeering acts, including eleven murders, numerous murder conspiracies and attempted murders, and trafficking in heroin and crack cocaine. (See id.) Count Two charged Defendant with conspiring to conduct and participate in the affairs of the same racketeering enterprise, in violation of 18 U.S.C. § 1962(d). (See id. ¶¶ 22-23.) Counts Fifteen through Twenty-Four and Twenty-Eight through Twenty-Nine charged Defendant with violent crimes in aid of racketeering ("VICAR"), in violation of 18 U.S.C. § 1959. (See id. ¶¶ 50-69, 76-79.) Count Thirty charged Defendant with conspiring to distribute heroin and crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). (See id. ¶¶ 80-83.) Counts Thirty-Six through Forty-Three charged Defendant with firearms offenses, in violation of 18 U.S.C. §§ 924(c) and 2. (See id. ¶¶ 89-93, 95-96.)

    **b.  Trial**

Trial commenced on November 4, 1996, and ended on April 10, 1997, when a jury convicted Defendant of all counts except Count Forty.[1] "The mountain of evidence that the Government presented spanned over 70 witnesses ranging from law enforcement to neighborhood residents, providing first-hand accounts of the

---

[1] Co-defendants Jose Muyet, Pedro Narvaez, and Antonio Feliciano were also convicted. All are serving life sentences.

criminal activity, and peaked with seven accomplice witnesses testifying to being members or associates of the gang." Muyet v. United States, 2004 WL 1746369, at *11 (S.D.N.Y. Aug. 3, 2004).

Among other crimes, the Defendant was convicted, along with co-defendants, of five murders—specifically, the murders of Julio Flores (Counts Fifteen and Sixteen), Carlos Sanchez (Count Nineteen), Raymond Sanchez (Count Twenty), Miguel Parrilla (Counts Twenty-One through Twenty-Three), and Radames Vega (Counts Twenty-Eight and Twenty-Nine). Additionally, the Defendant was convicted, along with co-defendants, of conspiring to murder Diego Garcia (Count Twenty-Four), as well as conspiring to murder and attempting to murder members of a rival drug gang (Counts Seventeen and Eighteen).

1. Murder of Julio Flores

Defendant's brother, Jose Muyet, put out a $2,000 contract for Julio Flores's murder. (See Gov't Opp. at 2.) Defendant, Luis Quinones, and Robert Corona then murdered Flores. (See id.) Defendant loaded the firearm equipped with a silencer, which was used by Corona to shoot Flores. (See id.) Quinones and Corona were cooperating witnesses at trial. (See id.)

2. Murders of Carlos and Raymond Sanchez

Carlos and Raymond Sanchez were innocent bystanders murdered by a retaliatory gang shooting undertaken at Defendant's

3

direction. As Judge Leisure, who presided over the trial, previously described the murders:

> The murder of the Sanchez brothers resulted from an incident between the Nasty Boys and a rival drug gang. The rival gang confronted the Nasty Boys and demanded that the Nasty Boys leave their distribution area. The testimony of Quinones and Corona indicates that John Muyet, livid at this show of disrespect, ordered all available members to help retaliate. The Nasty Boys then conducted a drive-by shooting of the rival gang, killing innocent bystanders Carlos and Raymond Sanchez in the process.

United States v. Muyet, 994 F. Supp. 550, 557 (S.D.N.Y. 1998).

### 3. Murder of Miguel Parrilla

When the Nasty Boys opened a particular drug trafficking spot, they agreed to pay "rent" to a drug dealer named Miguel Parrilla, who had been the previous "owner" of the spot. (See Gov't Opp. at 2.) However, Jose Muyet, in the presence of Defendant, subsequently explained that the Nasty Boys would no longer have to pay rent to Parrilla if they killed him and that he would pay $2,000 to any Nasty Boys member who carried out the hit. (See id. at 3.) Ultimately, however, a member of a different crew fulfilled the "contract" by murdering Parrilla. (See id.) Jose Muyet paid the killer the sum of cash, and Defendant criticized his own crew member for not fulfilling the contract himself. (See id.)

### 4. Murder of Radames Vega

Defendant, along with three of his co-defendants, agreed to murder Radames Vega in relation to an unpaid $50,000 debt. (See

4

id.) While Defendant did not pull the trigger, he participated in the murder and was at the scene. (See id.)

### c. Sentencing

On August 25, 1998, Judge Leisure sentenced Defendant to life imprisonment on each of Counts One, Two, Sixteen, Nineteen, Twenty, Twenty-Three, Twenty-Nine, and Thirty; ten years imprisonment each on Counts Fifteen, Seventeen, Eighteen, Twenty-One, Twenty-Two, Twenty-Four, and Twenty-Eight; thirty years imprisonment on Count Thirty-Six; and twenty years imprisonment each on Counts Thirty-Seven through Thirty-Nine, Forty-Two, and Forty-Three. (See dkt. no. 267.)

### d. Muyet's Request to the Bureau of Prisons ("BOP")

Defendant requested compassionate release from the BOP before bringing the instant motion. The Defendant attached to his motion the warden's December 14, 2022, denial of his compassionate release request, but not the request itself. (See Mot. at 6). The warden's denial says Defendant's request was "based on concerns related to COVID-19." (Id.)

### e. Muyet's Motion for Compassionate Release

On March 21, 2023, Defendant filed the instant motion for compassionate release, arguing he has shown extraordinary and compelling reasons based on his "rehabilitation, multiple health issues, severe prison conditions, minimum Risk PATTERN and the time he has already served." (Id. at 4.) Defendant's motion is

5

"based primar[il]y on his heightened risk of developing complication[s] if he contracts COVID-19." (Id. at 2.) Defendant has Type 2 diabetes with "proliferative diabetic retinopathy with macular swelling in both eyes" and has been diagnosed with chronic kidney disease, which is worsened by his use of ibuprofen and naproxen for his eye pain. (See id.) Defendant also has glaucoma, hyperlipidemia, hypertension, sickle cell traits, anemia, sleep apnea, and vitamin D deficiency. (See id.) He asserts he has been transferred to an outside hospital more than sixty times due to multiple health concerns. (See id.) Defendant acknowledges, however, that he has been vaccinated for COVID-19. (See id.)

Defendant also argues he is rehabilitated. He has completed numerous programs while incarcerated. (See id. at 2-3.) He also submitted letters from family and friends who would support him on release. (See id. at 17-37.)

In addition, Defendant argues the § 3553(a) factors favor release. (See id. at 3-4.) He cites courts that have granted compassionate release in murder cases and contends that his twenty-eight years in prison constitutes sufficient punishment. (See id. at 3.) He contends that he is not a danger to the community given his record in prison, his age, medical condition, and his support from family and friends. (See id.) Defendant also argues that his release would avoid sentencing disparity. (See id.) He writes that, while he was convicted in connection with five murders, "he was

6

never actually accused of committing any of the acts and was found guilty on the Pinkerton theory of liability." (See id. at 4.) Defendant states that a co-defendant, Julio Matias, pleaded guilty in connection with four murders and had "actually pulled the trigger" in two of them, yet received only twenty-three years imprisonment. (See id.) Other co-defendants Luis Quinones, Robert Corona, Juan Machin, and Aberlardo Ramos admitted to numerous murders, he says, and yet received lesser sentences. (See id.)

Finally, Defendant also states his upbringing is relevant in that he suffered childhood abuse while at a Roman Catholic home for children. He attaches as an exhibit an August 12, 2021, email from an attorney with the text of the Defendant's draft complaint against that institution. (See id. at 38-44.) Defendant says he did not mention this abuse at his sentencing hearing because at the time the Court had no discretion to deviate from the Sentencing Guidelines. (See id. at 5.)

## II.  Applicable Law

Under Section 3582, the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The First Step Act allows district courts "independently to determine what reasons, for purposes of compassionate release, are 'extraordinary and

7

compelling.'" United States v. Brooker, 976 F.3d 228, 234 (2d Cir. 2020). However, the guidance provided by the policy statement added to U.S.S.G. § 1B1.13 effective under the November 1, 2023, amendments to the Guidelines "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion." United States v. Lopez, 2024 WL964593, at *2 (S.D.N.Y. Mar. 5, 2024). By statute, however, "[r]ehabilitation [of the defendant] alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 238 (citing 28 U.S.C. § 994(t)).

The "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." United States v. Madoff, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020); see also United States v. Israel, 2019 WL 6702522, at *11 (S.D.N.Y. Dec. 9, 2019) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition . . . [Section 3582] was drafted using the word 'may,' not 'must.'"). The Court must also consider whether the Section 3553(a) factors warrant a sentencing reduction. See United States v. Keitt, 21 F.4th 67, 73 (2d Cir. 2021) (concluding that a district court may deny a motion for compassionate release without reaching the question of extraordinary and compelling reasons if the Section 3553(a) factors do not warrant a reduction).

8

Consideration of the relevant Section 3553(a) factors requires an assessment of "whether the relevant factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence." United States v. Senior, 2023 WL 8355920, at *2 (S.D.N.Y. Dec. 1, 2023) (internal quotations and citations omitted); see also United States v. Lisi, 440 F. Supp. 246, 252 (S.D.N.Y. 2020) (finding "extraordinary and compelling reasons" warranting the defendant's release but nevertheless denying motion for compassionate release because Section 3553(a) factors "weigh[ed] heavily against [a] reduction of [the defendant's] sentence").

As the proponent of this motion, Defendant bears the burden of proving both that "extraordinary and compelling reasons" exist and that the Section 3553(a) factors justify his early release. See Madoff, 465 F. Supp. 3d at 349; see also United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").[2]

---

[2] Section 3582 also requires exhaustion of administrative remedies. See 18 U.S.C. § 3582(c)(1)(A). Muyet appears to have satisfied this requirement.

## III. Discussion

Defendant has not demonstrated "extraordinary and compelling reasons" justifying his release, and the Section 3553(a) factors weigh against reducing the sentence originally imposed by this Court.

### a. No "Extraordinary and Compelling Reasons" Are Present

The circumstances here do not demonstrate any extraordinary and compelling reasons warranting early release.

Defendant's medical conditions are serious, but they do not warrant early release. He suffers from a range of medical conditions, several of which appear linked to his Type 2 diabetes, including kidney disease and retinopathy. His medical records reflect, however, that these conditions are monitored, and he has received appropriate treatment for them. Also, to the extent Defendant's health has worsened in custody, he has not shown that this is because of any inadequacy of the care he has received or that he would fare any better if not incarcerated.

Furthermore, while the United States Centers for Disease Control and Prevention ("CDC") recognizes that certain of Defendant's conditions may make him more likely to get severely ill from COVID-19,[3] he is vaccinated against it, having received

---

[3] CDC, People with Certain Medical Conditions (updated Apr. 15, 2024), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed May 24, 2024).

10

both of the initial doses of the COVID-19 vaccine and a booster shot. (See Mot. at 2.) Consistent with the decisions made by courts in this district, because Defendant is fully vaccinated, he cannot establish extraordinary and compelling circumstances warranting his release based on his risk related to COVID-19. See, e.g., United States v. Jaber, 2022 WL 35434, at *2–3 (S.D.N.Y. Jan. 4, 2022) (denying compassionate release to a fully vaccinated defendant, and noting that while "the Omicron variant appears to be more resistant to the vaccines that have been developed, due to the nature of its mutation . . . recent studies have revealed that Omicron causes a less serious infection in most people, specifically sparing the lungs, while vaccination still provides excellent protection against the most severe consequences of even this new variant—death and extended hospitalization"); United States v. Jones, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) (denying compassionate release because "recent data confirms that the COVID-19 vaccines dramatically reduce the risk of death or serious illness from the various variants of COVID-19, even the dreaded Delta Variant"); United States v. Alvarez, 2021 WL 3550218, at *3 (S.D.N.Y. Aug. 10, 2021) (same); United States v. Barnett, 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (same); United States v. Gomez, 2021 WL 4150966, at *4 (S.D.N.Y. Sept. 13, 2021) (same).

Separately, Defendant's evidence of rehabilitation, consisting primarily of programs undertaken while incarcerated and letters of support, does not qualify him for a sentence reduction. While rehabilitation alone cannot qualify a defendant for release, it can, when combined with other favorable factors, create an extraordinary and compelling reason for a sentence reduction. But this is not such a case. For sure, the programs Defendant has taken and the letters submitted by family, friends, and community members are a credit to Defendant. But as courts have found in other cases involving similar evidence, the Defendant's evidence of rehabilitation is not extraordinary and compelling. See United States v. Davis, 2024 WL 836477, at *3 (S.D.N.Y. Feb. 27, 2024); see also United States v. Lopez, 2021 WL 2821149, at *3 (S.D.N.Y. July 7, 2021) (denying motion to reduce life sentence where defendant introduced evidence of his clean disciplinary record, educational degree, work history, and numerous letters of support). Simply put, the evidence of rehabilitation offered by Defendant does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence.

In sum, the Defendant has not shown that there are extraordinary and compelling circumstances that support early release.

### b. In Any Event, the Section 3553(a) Factors Weigh Against Any Reduction in Sentence

Even assuming Defendant satisfied his burden to establish extraordinary and compelling reasons that might support a sentence reduction, the Section 3553(a) factors weigh against his release. Defendant was the second-in-command of an extraordinarily violent street crew responsible for numerous murders. He himself was convicted of murdering five different individuals. Defendant did not himself pull the trigger, but this is typical for senior members of a violent gang like this Defendant. And the evidence is clear: he was equally, if not more, responsible for those murders than the lower-ranking triggermen.

Further, there are no sentencing disparities to correct. Defendant's co-defendants received lesser sentences because they pleaded guilty and/or were cooperating witnesses for the Government. His co-defendants who went to trial received life sentences. Defendant himself received a life sentence on eight separate counts. In sum, Defendant's release would not promote respect for the law, protect the public, deter others from engaging in similarly destructive and dangerous crimes, and punish Defendant for his heinous crimes.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), (dkt. no. 490), is denied.

The Clerk of the Court shall close docket entry numbers 490 and 495 and mail a copy of this order to Defendant.

**SO ORDERED.**

Dated:     New York, New York
           June 3, 2024

_____
LORETTA A. PRESKA
Senior United States District Judge